**\*NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

_____

AUREA SUAREZ,

        Appellant,

v.

ROSA V. ALONSO

        Appellee.
_____

Case No. 13-265(FLW)(DEA)
Bankr. Case No. 11-2190(RTL)

**OPINION**

**WOLFSON, United States District Judge:**

    Plaintiff-Appellant Aurea Suarez ("Appellant") appeals from the Bankruptcy Court's December 4, 2012 order denying Appellant's Adversary Proceeding Complaint, finding no cause to deny discharge to Appellee-Defendant Rosa Alonso ("Debtor"). On appeal, Appellant argues that Debtor attempted to defraud the Bankruptcy Court by providing false information on her bankruptcy schedules and making false oaths. This Court has appellate jurisdiction to review the decision of the Bankruptcy Court pursuant to 28 U.S.C. § 158(a). For the reasons that follow, this Court will affirm the decision of the Bankruptcy Court.

**I.    FACTS & HISTORY**

    The following relevant facts are taken from the findings of fact in the opinion of the Bankruptcy Court issued in connection with its December 4, 2012 order. *See* Opinion of Bankruptcy Judge, Dec. 4, 2012, No. 11-2190 (RTL) (the "Bank. Op."), at 1.

    In 2007, Debtor, an educated and experienced business person, formed a corporation named Mi Apogeo, Inc. (the "Company"), with Debtor as the sole owner, in order to establish an English language website geared to the Latino market. *Id.* at 2. The website, named "My Latino

1

Voice," was intended to generate revenue primarily from advertising. *Id*. Funding for the business came from Debtor's savings, a line of credit secured by her residence, and rental proceeds from an apartment which she owned next to her residence. *Id*. at 2-3. Debtor estimated that she invested several hundred thousand dollars into the Company. *Id.* at 3. Further, Debtor's parents lent $35,000, and an editor who worked with her (the "Editor") lent $100,000 to the Company. *Id*. Both loans were secured by the Company's assets. *Id*.

In operating the Company, Debtor drew no salary or other compensation, and covered her daily expenses by relying on her savings, IRA, and a line of credit. *Id*. Occasionally, however, Debtor used the Company credit card for personal expenses such as groceries. *Id*. The Company's certified public accountant (the "CPA") treated these purchases as repayments of loans on the Company's tax returns. *Id*.

My Latin Voice generated some revenue, but the Company never earned a profit, and net operating losses were in the hundreds of thousands of dollars. *Id*. In December 2008, Appellant—who was in a personal relationship with the Debtor at the time—filed a mortgage on her home and loaned $242,000 to the Company. *Id*. This loan was secured by a junior lien on Debtor's residence, and the Company made monthly payments to Appellant equal to the amount of her mortgage payments. *Id*. By the time Appellant's loan matured in December 2010, the Company was still losing money. *Id*. When the Company failed to pay Appellant's loan, Appellant brought suit in New York State court against the Company and Debtor. *Id.* at 3-4.[1]

Subsequently, in January, 2011, Debtor sought counsel from a New York bankruptcy attorney (the "NY Bank. Attorney") regarding her corporate and personal financial problems. *Id*.

---

[1] The suit against Debtor was stayed by her bankruptcy; a default judgment was entered against the Company, but Appellant has not pursued collection against the Company's assets. *See* Bank. Op. at 4 n.1.

at 4.  She supplied him with extensive documentation regarding her business and personal financial affairs, including financial information from the Company's CPA and the loan documents associated with her parents, the Editor, and Appellant.  *Id*.  The NY Bank. Attorney determined that, although the Company had signed security agreements with Debtor's parents and the Editor, the security interests were not perfected.  *Id*.  Debtor relayed this information to the Company's attorney as well as her parents and the Editor.  The Company's attorney then prepared and filed UCC-1 financing statements.  *Id*.

The NY Bank. Attorney further recommended that Debtor file personal bankruptcy.  *Id*. He agreed to prepare all documents needed for her bankruptcy filing including the petition, schedules and a statement of financial affairs.  *Id*.  After the NY Bank. Attorney had completed the documents, he sent them to Debtor to review and sign, which she did.  Because the NY Bank. Attorney was not admitted in the District of New Jersey, where Debtor, as a New Jersey resident, needed to file her bankruptcy petition, he arranged for another attorney to sign and file Debtor's petition.  *Id.*  This attorney, (the "NJ Bank. Attorney") reviewed the bankruptcy papers, but did not meet with the Debtor or review any supporting documentation before filing the petition.[2]  *Id*.

Debtor's schedules filed with her original chapter 7 petition disclose the follow relevant information.

- Schedule B—Personal Property—discloses Debtor's ownership of the stock in Mi Apogeo, Inc., with a value of the stock at $75,000.00 and a notation "Subject to two (2) liens totaling $135,000."  No entry was made on Schedule B for a loan receivable from the Company.
- Schedule C—Property Claimed As Exempt—lists the stock in Mi Apogeo, Inc. as exempt under 11 U.S.C. § 522(d)(5) at "Full fair market value (FMV)" with a value of $75,000.
- Schedule D—Creditors Holding Secured Claims—lists the Debtor's parents and the Editor as having liens on the stock in the Company.

---

[2]   The NJ Bank. Attorney also attended the meeting of creditors, pursuant to 11 U.S.C. § 341(a).  *Id.*

3

- Schedule I—Current Income of Individual Debtors—discloses as the Debtor's primary source of income $12,500 per month as regular income from operation of a business. The form requests that a detailed statement of this business income be attached, but none was.
- Schedule J—Current Expenditures of Individual Debtors—claims regular expenses from operation of a business [as] $10,719 per month. Again the form requested a detailed statement of these business expenses, but none was attached.
- On Form B22A—Chapter 7 Statement of Current Monthly Income and Means-Test Calculation—the Debtor disclosed $1,781.00 on the line for gross wages, salary, tips, bonuses, overtime, commissions and $21,372.00 as Annualized Current Monthly Income for § 707(b)(7).

*Id.* at 5.

Additionally, at the § 341(a) meeting of creditors, Debtor testified that nobody had ever offered her money for her stock in the Company. *Id.* Appellant, who was also present at the meeting, followed up Debtor's testimony by asking if Debtor had ever received an offer of one million dollars for the Company. *Id.* Debtor responded that such an offer had been made totally in jest. *Id.*

Following the § 341(a) meeting, Appellant issued a subpoena, pursuant to Bankruptcy Rule 2004, for the Debtor to appear for an examination and to produce certain documents. *Id.* at 6. Debtor largely complied with the subpoena, producing most of the information requested—including banking records and income tax returns for herself and the Company—which amounted to thousands of pages of documents.[3] *Id*. On June 30, 2011, Debtor also appeared for her examination under Rule 2004. *Id.* During the examination, in response to a question regarding the identity of the Company's advertising clients, Debtor described several customers who had advertised during the previous year. *Id*. However, when Debtor was asked about specific advertising customers from 2009, the NJ Bank. Attorney objected to the question as

---

[3] For this reason, Debtor uploaded the documents to "Drop Box," an internet service, from which the NJ Bank. Attorney retrieved the documents and forwarded them to Appellant's attorney. *Id.* at 6.

4

irrelevant, being too remote in time. *Id.* Following the examination, Appellant requested via letter dated July 11, 2011, additional documentation, including the names of and payments made by all advertising customers for the website for 2009, 2010, and 2011. *Id.*

Before Debtor responded to the July 11 letter, Appellant filed an adversary complaint in the Bankruptcy Court on August 1, 2011, asserting pursuant to § 727(a)(2)-(6) of the Bankruptcy Code that Debtor was not entitled to a discharge. According to Appellant's Complaint, Debtor's original schedules confused the assets, liabilities, income and expenses of her wholly-owned corporation with her personal financial information, precluding discharge on several grounds under the Bankruptcy Code. *See* Compl. at ¶¶ 6-10; *see also* 11 U.S.C. § 727(a)(2)-(6). Debtor filed an Answer to the Complaint through the NJ Bank. Attorney, and supplied Appellant with the documents requested in the July 11 letter except for the names and amount of advertising revenue from the website's customers.[4] Bank. Op. at 6.

Shortly after the filing of the Answer, Debtor elected to retain a new attorney for both her bankruptcy proceeding and Appellant's adversary case. *Id.* With the guidance of this new counsel, Debtor filed the following amended documents: (1) Schedule B, deleting reference to the UCC liens against the Company stock; (2) Schedule D, omitting her parents and the Editor as secured creditors; (3) Schedules I and J, attaching detailed statements of monthly income and expenses for the Company. *Id.* at 6-7. Debtor was also deposed in connection with Appellant's case on November 16, 2011. *Id.* at 7.

Debtor then moved, and Appellant cross-moved, for summary judgment. *Id.* The Bankruptcy Court denied both motions because genuine issues of material fact existed regarding Debtor's intent. *Id.*

---

[4]   Regarding this information, the NJ Bank. Attorney responded that "[t]his request has been objected to previously." *Id.*

5

The parties appeared before the Bankruptcy Court for trial on May 14, 2012. At trial, Appellant called only two witnesses: Debtor and the NJ Bank. Attorney. *Id.* Debtor readily acknowledged the errors on her original bankruptcy schedules, agreeing that she inaccurately listed her Company stock as subject to UCC liens on Schedules B and D. *Id.* Debtor testified, however, that she relied entirely on the NY Bank. Attorney to complete her bankruptcy filing; she gave that attorney all the information regarding the loans to the Company, and trusted the lawyer to correctly report all her information. *Id.* Debtor denied the suggestion by Appellant's attorney that Debtor was trying to shield the Company from her creditors and intended to reap profits from it after bankruptcy; Debtor further denied that she intended to hinder, defraud, or delay her creditors. *Id.* Indeed, Debtor testified that by the time she had filed for bankruptcy, she was searching for a new job and, shortly thereafter, the website shut down and the Company has had no further business dealings. *Id.* at 7-8.

The Bankruptcy Court found Debtor to be a credible witness, and resultantly found that she did not intend to hinder, defraud, or delay her creditors, conceal any information, or knowingly make a false oath regarding liens on her stock in the Company. *Id.* The court further found that the erroneous statements regarding the UCC liens on the stock and Debtor's scheduling her parents and the Editor as secured creditors were attributable to a mistake by the NY Bank. Attorney, and that Debtor was not aware of the error until it was pointed out by her new attorney. *Id.* at 8. Similarly, with regard to the incorrect valuation of the stock at $75,000, the Bankruptcy Court found that Debtor did not make the valuation with any intent to deceive. *Id.* Moreover, and contrary to Appellant's arguments that her stock was worth considerably more than the $75,000 valuation made by Debtor on her bankruptcy schedules, the Bankruptcy Court found that the stock actually had no value at the time she filed bankruptcy. *Id.* The

Company had never turned a profit, reporting huge losses instead. *Id*. Indeed, Debtor's estimate of a $75,000 valuation based on advertising revenue did not take into account the Company's debts of at least $377,000 to Appellant, Debtor's parents, and the Editor. *Id*. Thus, the Bankruptcy Court found that, rather than understating the value of her stock to keep the trustee from selling it, Debtor overvalued the stock, but did so innocently. *Id*. at 8-9. Finally, the court also found that the error on Schedule C, listing the stock as exempt, was solely the result of the NY Bank. Attorney's failure to distinguish between Debtor and the Company, and that Debtor had no intention of improperly claiming an exemption. *Id*. at 9.

Regarding whether Debtor had ever received a bona fide offer to purchase the Company for a million dollars, Debtor testified that such a statement had been made in jest, at a social setting, before the website had even launched. *Id.* Again, the Bankruptcy Court found Debtor's testimony credible, and that there was never a serious offer to purchase the Company. *Id.*

With respect to Debtor's failure to schedule a loan receivable from the Company as an asset on her bankruptcy schedules, Debtor testified that there had been no written loan agreement with the Company, and thus she had considered the money she put into the company as her equity, only valuable if the Company ever made a profit. *Id.* Based on this testimony, and the fact that no books or records had been introduced into evidence to the contrary, the court found that Debtor did not knowingly fail to schedule a loan receivable from the Company as an asset.[5] *Id.*

Lastly, as to whether Debtor misrepresented her income and expenses on Schedules I and J and on form B22, the Bankruptcy Court found that the failure to list any wages was not in

---

[5] In that connection, the Bankruptcy Court also found, contrary to Appellant's arguments, that Debtor's use of the Company credit cards for personal purchases did not evidence a loan, and that the tax consequence of her use of these credit cards was not an issue before the Bankruptcy Court. *Id.*

error. *Id*.  The court found that Debtor did not receive any income from the Company and the minor use of Company credit cards should not have been reported as income. *Id*. at 9-10.  In fact, the Bankruptcy Court determined that the Company's income and expenses were incorrectly, *i.e.*, unnecessarily, reported on Debtor's Schedules I and J, but, once again, the errors were committed by the NY Bank. Attorney and were not a knowing misstatement by Debtor. *Id*. at 10.  The court further found that Debtor had since corrected all relevant mistakes from the original schedules. *Id*.

Following trial and arguments by the parties, the Bankruptcy Court issued a written opinion, finding based on Debtor's truthful testimony that she did not intend to hinder, defraud or delay her creditors, or conceal any information, that any errors on Debtor's original schedules and statement of financial affairs were unintentional, and accordingly denied Appellant's objection to discharge.  *See generally id*.  On December 4, 2012, in connection with the written opinion, the Bankruptcy Court entered its order rendering judgment in favor of Debtor, finding no cause to deny discharge, and ordering that an order for discharge be entered for the reasons stated in the opinion.  It is from the December 4, 2012 order that Appellant now appeals.

## II.     STANDARD OF REVIEW

The proper standard of review to be applied by a district court when reviewing a ruling of a bankruptcy court is determined by the nature of the issues presented on appeal.  *In re Beers*, No. 3:09-CV-01666, 2009 WL 4282270, *3 (D.N.J. Nov. 30, 2009) (quoting *Baron & Budd, P.C. v. Unsecured Asbestos Claimants Committee*, 321 B.R. 147, 157 (D.N.J. 2005)).  A district court reviews "the bankruptcy court's legal determinations *de novo*, its factual findings for clear error and its exercise of discretion for abuse thereof." *In re United Healthcare System, Inc.*, 396 F.3d 247, 249 (3d Cir. 2005) (quoting *In re Trans World Airlines, Inc.*, 145 F.3d 124, 130-31 (3d

Cir. 1998)). Review of facts under the "clearly erroneous" standard is significantly deferential and requires a "definite and firm conviction that a mistake has been committed." *Concrete Pipe & Prods. v. Construction Laborers Pension Trust*, 508 U.S. 602 (1993). Conversely, legal conclusions from the bankruptcy court are subject to *de novo*, or plenary, review by the district court. *Donaldson v. Bernstein*, 104 F.3d 547, 551 (3d Cir. 1997). Mixed findings of fact and conclusions of law must be broken down, and the applicable standards—"clearly erroneous" or "de novo"—must be appropriately applied to each component. *Meridian Bank v. Alten*, 958 F.2d 1226, 1229 (3d Cir. 1992) (citing *In re Sharon Steel Corp.*, 871 F.2d 1217, 1222 (3d Cir. 1989) and *Universal Minerals, Inc. v. C.A. Hughes & Co.*, 669 F.2d 98, 102-03 (3d Cir. 1981)).

## III.   DISCUSSSION

In her opening brief on appeal, Appellant advanced numerous claims of error stemming from the Bankruptcy Court's decision to dismiss Appellant's Complaint and permit Debtor's discharge from bankruptcy. Debtor countered in her opposition papers, *inter alia*, that much of Appellant's arguments on appeal concerned facts and evidence that were not presented to the Bankruptcy Court in the underlying proceeding. In light of this, Appellant, in her reply, appears to have withdrawn any claim premised on new evidence. Accordingly, I will review only those remaining claims in Appellant's appeal based on evidence and arguments that were properly raised before the Bankruptcy Court.[6] *In re Websci Techs., Inc.*, 234 F. App' x. 26, 31 (3d Cir. 2007) (finding no error by district court in refusing to permit appellant in bankruptcy matter to supplement record with new materials relating to allegations of fraud and concealment that were not part of the bankruptcy court's record); *Smith v. Manasquan Sav. Bank*, No. 12-00085 (JAP),

---

[6]   I note that Appellant also filed a letter, prior to filing her reply brief, presenting additional evidence in support of her appeal. I consider the contents of that letter only to the extent it contains evidence properly in the record before the Bankruptcy Court.

9

2012 WL 4339561, at *5 (D.N.J. Sept. 20, 2012) (noting that district courts reviewing a bankruptcy court's decision on appeal will not consider new evidence that was not part of the factual record before the bankruptcy court).

Appellant does not explicitly set forth the bases for her appeal.[7] After reviewing Appellant's arguments, however, the Court can discern two claims of error based on evidence that has been presented below. First, Appellant asserts that the Bankruptcy Court should not have excused any errors or omissions in Debtor's bankruptcy filings on the ground that the errors were the fault of Debtor's attorney. *See* App. Reply Br., 7. Second, Appellant argues that the Bankruptcy Court erred when it determined that Debtor's failure to provide the names of advertising customers for the website, and the specific revenue attributable to those customers, was not a material omission precluding Debtor's discharge from Bankruptcy. This second claim, as explained in more detail *infra*, rises or falls with Debtor's argument that the Bankruptcy Court erred in calculating the amount of the Company's revenue and finding that the value of Debtor's interest in her Company stock was worthless.

With respect to Appellant's first claim, she appears to argue that the Bankruptcy Court erred, as a matter of law, when it determined that Debtor's inaccurate filings could be excused because Debtor relied on her attorney, and thus Debtor's discharge was not barred under § 727(a)(4), for providing a false oath.[8] *See* App. Reply Br., 14-15. This argument also

---

[7] Apart from following a basic brief structure, Appellant's papers are not organized in any meaningful fashion. Nevertheless, I make every attempt to extricate from these papers Appellant's claims on appeal.

[8] Specifically, Appellant argues:

> The trial court erred in denying [Appellant's] complaint on the basis of discrepancies on [D]ebtor's schedule as a result of attorney reliance, however the advice of counsel should not have been relied [on] as a defense when in this case

10

necessarily challenges any factual finding by the Bankruptcy Court regarding Debtor's knowledge of the errors and her intent to commit them. Indeed, the success of Appellant's claim turns on these factual findings. Accordingly, I first review these findings, applying the clearly erroneous standard of review, before analyzing the legal aspect of Appellant's claim under a *de novo* standard.

Appellant principally argues that, contrary to the Bankruptcy Court's finding, Debtor had full knowledge that she failed to disclose all pertinent information to her NY Bank. Attorney, and that she was aware that her Bankruptcy filings inaccurately reflected her financial situation. Thus, Appellant contends that "the reasonableness of [a debtor's] reliance on an attorney to accurately complete bankruptcy schedules is undermined" where, as here, Debtor failed to provide full and truthful information to the attorney completing the schedules. *See* App. Reply Br., 10-12. In that connection, with regard to the adequacy of Debtor's disclosures in her filings, the Bankruptcy Court found as a fact that Debtor "did not intend to hinder, defraud or delay her creditors, conceal any information, or knowing make a false oath regarding liens on the stock in the Company." Bank. Op., 8. The Bankruptcy Court also found that Debtor did not "knowingly fail to schedule a loan receivable from the Company as an asset." *Id.* at 9. Finally, the Bankruptcy Court found that Debtor did not withhold information from her Schedules I and J because "Debtor and the Company's CPA provided the [NY Bank. Attorney] with *all* the relevant information" and, moreover, "the correct filing would not include the corporate income and expenses [of the Company] on the individual Debtor's schedules." *Id.* at 10 (emphasis added). With respect to the NY Bank. Attorney's involvement in Debtor's filings, the

---

the [D]ebtor had full and complete knowledge and is agreement not to divulge the required information.

App. Reply Br., 7.

Bankruptcy Court found that "the erroneous statement regarding the UCC liens on the stock . . . was attributable to a mistake by the [NY Bank. Attorney] in failing to distinguish between the Debtor and the Company. The *Debtor was not aware of the error* until it was pointed out by Plaintiff's attorney." *Id.* at 8 (emphasis added). Similarly, the Bankruptcy Court found that the NY Bank. Attorney's "failure to distinguish between the Debtor and the Company caused him to incorrectly list the stock on Schedule C as exempt. The Debtor had no intention of improperly claiming an exemption." *Id.* at 9. Finally, the Bankruptcy Court found that any error on Debtor's Schedules I and J, and in the Means-Test form, "was committed by the [NY Bank. Attorney] and was not a knowing misstatement by the Debtor." *Id.* at 10. In sum, the Bankruptcy Court found Debtor credible, that she did not knowingly or intentionally withhold or misstate information on her filings, and that any errors were a result of the NY Bank. Attorney and not Debtor.[9]

Appellant advances no credible argument that these findings were in error, except to claim that Debtor should have disclosed specific information relating to the Company's advertising customers. As I explain in more detail below, however, the Bankruptcy Court properly determined that such information was immaterial to Debtor's personal bankruptcy case. Beyond this information, Appellant points to nothing specific that should have been disclosed that was not. Thus, Appellant has not carried her burden of showing that the Bankruptcy Court clearly erred when it found that Debtor fully disclosed to the NY Bank. Attorney all relevant information about her financial situation and that of the Company. To the contrary, the record

---

[9] The Bankruptcy Court also found that Debtor truthfully testified that there had been no bona fide offer to purchase the Company for one million dollars, and that Debtor's use of her credit card for grocery purchases was not sufficient cause to deny discharge under § 727(a)(4). Although Appellant does not appear to challenge these findings or determination on appeal, I nonetheless note that the Bankruptcy Court did not err in this regard.

12

supports the Bankruptcy Court's finding, as Debtor disclosed "thousands of pages" of documents in response to Appellant's Rule 2004 subpoena, and, with the guidance of new counsel, promptly corrected and amended her filings when she discovered her errors. Furthermore, as the above cited findings demonstrate, the Bankruptcy Court based its findings primarily on credibility determinations after receiving testimony from Debtor. On appeal, this Court's review of such determinations is highly circumscribed, "review of factual findings is limited to clear error . . . and [I] give deference to the trial court's determination of credibility." *In re Graves*, 33 F.3d 242, 251 (3d Cir. 1994) (citation omitted) (citing *In re Brown*, 951 F.2d 564, 567 (3d Cir. 1991)); *Kool, Mann, Coffee & Co. v. Coffey*, 300 F.3d 340, 353 (3d Cir. 2002) ("[I]n reviewing the bankruptcy court's factual findings we are to give due regard to the opportunity of that court to judge first-hand the credibility of witnesses."). In light of this significant deference I must give to the Bankruptcy Court's credibility determination of Debtor, I conclude that Appellant's challenge fails with respect to whether the Bankruptcy Court correctly found that Debtor fully disclosed her financial situation to her attorneys.

The remaining issue in this aspect of Appellant's appeal is whether the Bankruptcy Court properly excused Debtor's initial filing errors as an unintentional error resulting from reasonable reliance on the NY Bank. Attorney. In its opinion, the Bankruptcy Court relied on the seminal Third Circuit case, *In re Topper*, 229 F.2d 691 (3d Cir. 1956), concluding that "[u]nder the *Topper* rule any inaccuracies are excusable and not the product of the Debtor's intentional misrepresentation or concealment." Bank. Op., 16-18. The court distinguished case law cited by Appellant, primarily on the grounds that the debtors in those cases were intentionally concealing assets from their attorneys and the court. *Id.* at 17-18. Because Debtor lacked such intent, the Bankruptcy Court concluded that there was no cause to deny Debtor's discharge due to

inaccurate filings by her attorney. *Id.* at 18.

Although I review *de novo* the Bankruptcy Court's decision in this regard, Appellant provides this Court with no argument, and cites no law, showing that *Topper* does not apply, or that the Bankruptcy Court misapplied the *Topper* rule to Debtor's circumstances. Instead, Appellant cites three cases, each for the general proposition that a debtor must make a full disclosure of her financial situation in bankruptcy filings.[10] *See In re Zimmerman*, 320 B.R. 800, 808 (Bankr. M.D. Pa. 2005); *In re Arcuri*, 116 B.R. 873, 881 (S.D.N.Y. 1990); *In re Chalik*, 748 F.2d 616, 618 (11th Cir. 1984). None of these cases deal with a debtor's reasonable reliance on an attorney, and thus do not undermine the rule set forth in *Topper*, and correctly restated by the Bankruptcy Court, that because § 727(a)(4) requires an actual intent to defraud, "the advice of counsel may be an excuse for an inaccurate or false oath."[11]  229 F.2d at 693. In *Zimmerman*, the court found that the debtor exhibited a "reckless indifference to the truth" in his filings and statements, and did so with a fraudulent intent, thus barring discharge under § 727(a)(4). In *Arcuri*, the court found that the plaintiff challenging the debtor's discharge under § 727(a)(4) had failed to show that the debtor had actually made a false statement. 116 B.R. 881-82. Finally, in *Chalik*, the court considered whether the deliberate failure to disclose worthless assets constituted a false oath. 748 F.2d at 618. In contrast, in the present case, the has been no finding by the Bankruptcy Court that Debtor acted with reckless indifference to the truth or failed to disclose worthless assets; to the contrary, as previously noted, the Bankruptcy Court found that there was no fraudulent intent in Debtor's inaccurate filings, and that Debtor, if anything, disclosed certain assets unnecessarily. For these reasons, I conclude that the Bankruptcy Court

---

[10]  Appellant does not cite any of the same cases she presented to the Bankruptcy Court, however, having reviewed the Bankruptcy Court's analysis, I agree that those cases are not contrary to *Topper*.

[11]  I further note that none of these decisions are binding on this Court.

14

did not err when it rejected Appellant's argument that § 727(a)(4) barred Debtor's bankruptcy discharge.

Turning to Appellant's second claim, Appellant takes issue with Debtor's failure to disclose advertising customer names and revenue received from the years 2009-2011, and the Bankruptcy Court's determination that such information was not material to Debtor's bankruptcy case. App. Reply Br., 8-10.[12] Appellant further contends that Debtor failed to "provide any factual or legal support for [her] failure to turn over the advertising revenue of the [C]ompany for 2009, 2010 and 2011." *Id.* at 9.

As Debtor and the Company are distinct entities, and only Debtor's personal finances are at issue in this chapter 7 case, the Company's revenue is only relevant insofar as it pertains to Debtor's finances, *i.e.*, the value of Debtor's Company stock. *See* Bank. Op., 12, 14; *see also In re DiLoreto*, 266 F. App'x 140, 142-43 (3d Cir. 2008) (where no finding of basis to reverse-pierce corporation, corporation's assets irrelevant in determining individual's assets); *In re Thurman*, 901 F.2d 839, 841 (10th Cir. 1990) ("MBank has cited no authority, and we have found none, which holds that the transfer of property of another [such as a corporation] which has incidental effect upon the assets of a debtor satisfies the requirements of § 727(a)(2)(A)."). In that connection, the Bankruptcy Court determined that the specific names of advertising customers for the company, and the respective amount of revenue collected from each customer, was not relevant to Debtor's bankruptcy filing because it pertained to the Company and not Debtor. *See* Bank. Op., 14-15. The Bankruptcy Court further reasoned that if Appellant "had a

---

[12] As best as the Court can discern, this argument appears to be related to Appellant's claims that Debtor's discharge should be precluded under § 727(a)(2) (concealment or destruction of evidence with intent to hinder or defraud creditors), (a)(3) (failure to preserve business records), (a)(5) (failure to satisfactorily explain loss or deficiency of assets), and/or (a)(6) (refusal to obey a court order). Again, I analyze each of Appellant's challenges, legal and factual, under the appropriate standards.

15

legitimate reason for requesting the customer names from 2009, she could have moved to compel disclosure, but she failed to do so."[13]  *Id.* at 15.  Appellant has not shown on this appeal why the identity of the Company's advertising customers is relevant, and thus why the Bankruptcy Court erred when it found that information immaterial to Debtor's bankruptcy.

Indeed, the Bankruptcy Court, was satisfied with Debtor's explanation, and supporting documents, that all of the Company's revenue was traceable on the disclosed bank statements, and, thus, the Company stock could be accurately valued.[14]  *See id.* at 8-9, 15.  Although, Appellant argues that the stock should be valued higher, she fails to show how the Bankruptcy Court's calculations finding the stock worthless are clearly erroneous.[15]  *See* App. Reply Br., 15.  Appellant's efforts are misplaced, as she fails to demonstrate that the Bankruptcy Court clearly erred when it found that, throughout the Company's existence, its debt—in the form of considerable loans—far exceeded its revenue, and that Debtor never drew a salary from the Company.  See Bank. Op., 8.  Appellant's alternative calculations of revenue, and the resulting value of the Company's stock, fail to account for the Bankruptcy Court's findings with respect to the Company's ongoing and considerable liabilities.  I therefore cannot conclude, based on Appellant's arguments, that in reviewing the Bankruptcy Court's findings, I am left with a "definite and firm conviction that a mistake has been committed."  *Concrete Pipe & Prods. v. Construction Laborers Pension Trust*, 508 U.S. 602.  Accordingly, Appellant's claim that Debtor

---

[13]  I note that Appellant's papers on appeal refer to the failure to disclose information for 2009-2011, while the Bankruptcy Court opinion refers only to 2009.  The Bankruptcy Court's reasoning regarding the relevance of the 2009 information, however, applies with equal force to 2010 and 2011.

[14]  Appellant, in her own papers, identifies a trial colloquy between the Bankruptcy Court and Debtor, explaining how the Company bank statements could easily be read to show the amount of revenue collected by the Company.  *See* App. Reply Br., 12.

[15]  It is difficult to follow Appellant's calculations, which at times appear to be nothing more than correcting Debtor's original calculations.  *See* App. Reply Br., 13-14.

did not disclose specific information regarding the Company's advertising revenue fails because it is relevant only in connection with the valuation of Debtor's stock, and Appellant has not carried her burden on this appeal showing that the Bankruptcy Court clearly erred when it found the stock to be worthless.

Beyond these claims, Appellant only presents generalized arguments, which the Court construes as claims that the Bankruptcy Court erred, in law and/or in fact, when it determined that Debtor was not precluded under § 727(a)(2)-(6) of the Bankruptcy Code from being discharged from bankruptcy. At bottom, these claims stem from Appellant's apparent belief that Debtor has hidden evidence of her true financial condition from Appellant, Debtor's other creditors, and the Bankruptcy Court. *See* App. Reply Br., 8. In other words, each of Appellant's remaining claims is a variation of Appellant's contention that Debtor was less than truthful in the proceedings below, which led to erroneous findings by the Bankruptcy Court. *See, e.g.*, App. Reply Br., 12-13 (explaining that in relying on Debtor's bank statements to calculate the Company's revenue, the Bankruptcy Court "did not take into account the multiple false oaths and errors which directly related to [D]ebtor's business"). Because the Bankruptcy Court found Debtor to be credible and truthful, and Appellant has pointed to no testimony or other evidence properly considered on this appeal to show that such a finding was clearly erroneous, Appellant cannot prevail on her remaining claims that the court below erred. *In re Dr. R.C. Samanta Roy Institute of Sci. Tech. Inc.*, 465 F. App'x 93, 96 (3d Cir. 2011) ("A bankruptcy court's 'ultimate determination of fact' will not be set aside unless 'that determination is completely devoid of minimum evidentiary support displaying some hue of credibility or bears no rational relationship to the supportive evidentiary data.'" (Quoting *Fellheimer, Eichen & Braverman, P.C. v. Charter Techs., Inc.*, 57 F.3d 1215, 1223 (3d Cir. 1995))); *see also Kool, Mann, Coffee & Co. v. Coffey*,

300 F.3d at 353 (deferring to Bankruptcy Court's credibility determinations).

As noted throughout this Opinion, the Bankruptcy Court found that Debtor fully disclosed all information material to her bankruptcy proceeding, and cured any errors in her filings once she retained new counsel. After reviewing the record, this Court is satisfied that the Bankruptcy Court's findings, rooted in credibility determinations and documentary evidence, that Debtor's initial filing errors in this matter were unintentional, honest mistakes based on advice she received from counsel, and furthermore, that Debtor made every effort to correct these errors and to disclose all materially relevant information pertaining to her finances, were not in error. I find no basis to reverse the Bankruptcy Court's decision that Debtor should not be precluded from discharge under § 727(a)(2)-(4).

## IV. CONCLUSION

For the reasons set forth above, the Court concludes that the Bankruptcy Court did not err in denying Appellant's Adversary Proceeding Complaint. Accordingly, the Court AFFIRMS the Bankruptcy Court's order.

Date: September 17, 2013                    /s/ Freda L. Wolfson
                                            Hon. Freda L. Wolfson, U.S.D.J.